IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


TAMMY LYNN LAMB,

        Plaintiff,

vs.                              Case No. 17-4069-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On April 13, 2016, administrative law judge (ALJ) Melvin B. Werner issued his decision (R. at 10-23). Plaintiff alleges that she has been disabled since July 1, 2013 (R. at 10). Plaintiff is insured for disability insurance benefits through

4

September 30, 2014 (R. at 12). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 13). At step two, the ALJ found that plaintiff has severe impairments (R. at 13). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13). After determining plaintiff's RFC (R. at 15-16), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 22). At step five, the ALJ found that plaintiff could perform other work that exists in significant numbers in the national economy (R. at 22-23). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 23).

**III. Did the ALJ err by failing to address post-hearing objections to the vocational expert (VE) testimony?**

On March 3, 2016, a hearing was held in which testimony was given by the plaintiff and a vocational expert (VE) (R. at 37-68). On March 22, 2016, plaintiff's counsel filed a post-hearing memorandum of law and objections to the VE testimony (R. at 389-397). On April 13, 2016, the ALJ issued his decision (R. at 10-23). In that decision, he stated the following:

> Post-hearing, the claimant's representative submitted a post-hearing memorandum brief with objections to the testimony of the vocational expert (Exhibit 26E). The objections relate to the expert's qualifications to serve as a vocational expert, the data relied upon in determining

>           the number of jobs cited, and the
>           methodology utilized by the vocational
>           expert to estimate the number of jobs based
>           on this data.  The record contains the
>           vocational expert's curriculum vitae, and
>           the undersigned finds that the vocational
>           expert is qualified, and that his responses
>           are supported by substantial evidence.  For
>           these reasons the objections of the
>           claimant's representative are overruled.

(R. at 10).

First, plaintiff argues that the ALJ must rule on the post-hearing objections to the VE testimony (Doc. 14 at 5).  However, it is clear from the ALJ decision that he did rule on the objections.  The real issue in this case is the second point raised by plaintiff, whether the ALJ's erred in his ruling by failing to substantially address plaintiff's objection regarding the reliability of the VE testimony.  Plaintiff argues the ALJ erroneously relied on the VE testimony because the VE testified that he relied on Job Browser Pro (by SkillTRAN), and the VE acknowledged in his testimony that they are not very accurate on the numbers (Doc. 14 at 7).

After the VE testified that plaintiff, given her RFC limitations, could perform two sedentary jobs, the VE was questioned as follows:

>           Q (by ALJ):  Thank you.  And what is the
>           source for the information regarding the
>           number of jobs that you've identified?
>
>           A (by VE):  Yes, Your Honor, and these are
>           public information that anybody could look

6

>up, but it's a work product that knows how
>to interpret them.  I use job surveys and
>searches, since this record is from the
>Department of Labor, county business
>pattern, Chamber of Commerce publications,
>Employment Security Division publications,
>Bureau of Labor statistics, and I do use Job
>Browser Pro, but they're not very accurate
>on the numbers.  But we just use them kind
>of as a backup occasionally.
>
>Q:  …Job Browser Pro…why are you mentioning
>that, that's my question?
>
>A:  Because it really gives the best
>explanation of a lot of the DOT
>information…I mean the Dictionary of
>Occupational Titles.  And the reason I
>mentioned it is because they have more up-
>to-date jobs and they do have an
>occupational base that they give.  It's not
>real accurate.  I've actually supplied some
>numbers to them, but I used it because it's
>something that I use in my formulation of
>everything, Judge.
>
>Q:  Is that again a document or a program
>that's available in the public domain that
>someone in your field generally would be
>able to access?
>
>A:  Yes, Your Honor.  In fact probably all
>vocational experts use Job Browser Pro.

R. at 62-63).  Later, the VE was asked the following by

plaintiff's counsel:

>Q (by attorney):  What are your
>qualifications as a numbers expert?
>
>A (by VE):  Actually I sell numbers to other
>vocational experts and I have a – well, I've
>got a Master's Degree, but I took courses in
>statistics and statistical analysis.  And so
>I use those courses that are on the
>Bachelor's level and on the Master's level,

7

> I use those in formulating my numbers. And
> I take the information that I gave the Judge
> on where I get my numbers from and use the
> statistical analysis to come up with the
> numbers.

(R. at 64-65).

Thus, the VE testified that he used a variety of sources to determine the numbers of jobs that the VE identified as jobs that plaintiff could perform. He listed the following sources:

- job surveys and searches (since this record is from the Department of Labor)
- county business pattern
- Chamber of Commerce publications
- Employment Security Division publications
- Bureau of Labor statistics
- Job Browser Pro

(R. at 63). According to 20 C.F.R. § 404.1566(d), Social Security takes administrative notice of reliable job information available to determine the number of jobs that exist that a claimant can perform, including County Business Patterns. Social Security may also utilize a vocational expert. 20 C.F.R. § 404.1566(e). In this case, a VE did testify, and the VE set forth his sources, including County Business Patterns. Furthermore, there is nothing constraining the VE from using sources not set forth in the above regulation. As one court stated, what would be the point of vocational testimony if it could not reach beyond matters already established through administrative notice? <u>Gay v. Sullivan</u>, 986 F.2d 1336, 1340 (1993).

The question before the court is whether the ALJ's reliance on the VE testimony was error in light of the VE testimony that one of the sources he looked at was Job Browser Pro. The VE testified that he looked at 6 sources, 1 of which was Job Browser Pro. The VE himself acknowledged that it is not very accurate on the numbers, that it is used as a backup occasionally, that it gives the best explanation of a lot of the DOT (Dictionary of Occupational Titles) information, they have more up-to-date jobs, and they have an occupational base (R. at 63). The ALJ also set forth his qualifications in statistics and statistical analysis in formulating his numbers (R. at 64-65).

In the case of Rogers v. Astrue, 312 Fed. Appx. 138, 141-142 (10th Cir. Feb. 17, 2009), the VE testified that based on his placement experience and also in a document that he had, 11,000 sedentary hand packager jobs existed. The court held that if the unidentified document was the only basis upon which the VE explained his testimony, the court would be required to remand for more explanation. However, the VE also testified that in his professional placement experience, the job of hand packager can be done at the sedentary level. The court noted that providing this type of professional, experience-based evidence is precisely what reliance on evidence from a VE is meant to accomplish. Thus, the ALJ could reasonably rely on the VE

9

testimony as substantial evidence to support her finding that plaintiff could perform the work in question and was not disabled.

If plaintiff's only source in formulating the number of jobs that the VE had identified as jobs that plaintiff could perform was Job Browser Pro (given the VE testimony regarding the accuracy of the Job Browser Pro numbers), then plaintiff would have a legitimate basis to question the ALJ's finding that plaintiff's testimony on this point was supported by substantial evidence. However, the VE listed 6 sources to support his testimony regarding the number of jobs; Job Browser Pro was only one of the six sources. One of the other 6 sources utilized by the VE is a source which Social Security takes administrative notice of as a source of reliable job information. Second, the VE himself noted the limitations in using Job Browser Pro, and explained why he used it. Third, the VE testified that he takes the information on where he got his numbers from and then uses statistical analysis to come up with the numbers of jobs that plaintiff can perform.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ

must be reasonable and consistent with the evidence. See <u>Glenn v. Shalala</u>, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1257-1258 (10th Cir. 2007). On the facts of this case, the court finds that substantial evidence exists in the record to support the ALJ's finding that the VE testimony was supported by substantial evidence.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 3rd day of July 2018, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge